CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

9/17/2024
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

FRANKIE L. SMITH SR.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

CASE NO. 6:23-cv-00078

MEMORANDUM OPINION
& ORDER

JUDGE NORMAN K. MOON

Pending before the Court is Defendant United States' motion to dismiss. Dkt. 16. Defendant argues that the amended complaint brought by Plaintiff Frankie L. Smith Sr. should be dismissed based on a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), as well as a failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* Plaintiff has also filed a motion for summary judgment. Dkt. 29. These motions are fully briefed and ripe for the Court's review.[1]

For the reasons discussed below, the Court will grant in part and deny in part the motion to dismiss. Because the Court finds Plaintiff's motion for summary judgment, Dkt. 29, to be premature at this stage in the case, the Court will deny this motion.

---

[1] The Court has determined that the legal issues presented in the parties' memoranda have been fully argued and that oral argument would not aid the decisional process.

# I. BACKGROUND

The facts alleged in Plaintiff's amended complaint[2] are accepted as true for the purposes of considering a motion to dismiss.

Plaintiff is a Lynchburg resident and veteran who has received healthcare services from the U.S. Department of Veterans Affairs ("VA") over the years at the Salem Veterans Affairs Medical Center ("Salem VAMC") and its related facilities.

In April 2020, Plaintiff visited the Lynchburg General Hospital Emergency Room and was diagnosed with acute kidney injury ("AKI"). Dkt. 6 ("Am. Compl.") ¶ 13.[3] He alleges that his kidney function was declining before his formal diagnosis and that his health care providers at the VA failed to diagnose or otherwise act appropriately in response to information indicating potential kidney problems. More specifically, he alleges that urine tests in February 2016, March 2019, and June 2019 indicated the presence of kidney issues. *Id*. ¶¶ 8, 11-12. However, his providers did not diagnose his kidney condition, inform him of test results, or otherwise address his potential problems. *Id*. ¶¶ 8, 11-12.

Plaintiff also alleges that in the years leading up to and following his April 2020 diagnosis, he was prescribed certain medications that may have worsened the condition of his kidneys and VA personnel failed to take him off such medications despite the potential presence of kidney damage. *Id*. ¶¶ 8, 10.

In the aftermath of his AKI diagnosis, Plaintiff alleges that the Defendant "did not record the diagnosis in [his] chart," nor "discuss the diagnosis with him." *Id*. ¶ 13. He states that

---

[2] Plaintiff filed his initial complaint on December 13, 2023, Dkt. 1, and an amended complaint on December 19, 2023. Dkt. 6. As noted later, the Court will generally refer to the amended complaint as the "complaint" throughout this opinion.

[3] The Court notes that Plaintiff made several filings which lack page, paragraph, or exhibit numbers. When such labels are present, the Court will cite to those. Otherwise, the Plaintiff's page numbers are cited based on the identifications affixed by the docketing system to the top of each page.

Defendant later diagnosed him in July 2020 with "minimal chronic medical renal disease." *Id*. ¶14. (Plaintiff's complaint also alleges that urine tests conducted by the Defendant after June did not detect concerning levels of protein in his urine until a test indicated an abnormal amount on August 14, 2023. *Id*. ¶ 13. Plaintiff alleges that he also saw an outside provider for urine tests in April and August 2023 and these tests also indicated protein in his urine. *Id*. ¶ 15. Plaintiff seems to suggest that the Defendant's tests were inaccurate. *Id*. ¶ 15. However, Plaintiff's concerns about the more recent urine testing did not arise until after he filed an administrative complaint with the VA.)

Plaintiff currently suffers from diabetes, high blood pressure, and chronic kidney disease. *Id*. at 4. He contends that his medical care providers misdiagnosed him with a variety of other conditions over the years, including HIV in 2017; cervical spondylosis with radiculopathy in 2018; circadian rhythm disorder in 2018; benign paroxysmal positional vertigo or nystagmus in 2020; and chronic kidney disease mineral and bone disorder in 2021. *Id*. at 4-5. He also alleges that the VA has failed to maintain accurate records of Plaintiff's medications and health conditions at different points going back to 2013. *Id*. ¶¶ 6-8, 12-13.

On April 4, 2022, Plaintiff filed a personal injury claim with the VA by completing a Standard Form 95 ("SF-95").[4] Plaintiff sought $500,000 in damages for personal injury –

---

[4] Plaintiff did not attach the SF-95 to either his original complaint, filed December 13, 2023, or his amended complaint, filed December 19, 2023. He did, however, attach to his original Complaint a copy of a letter that the VA's Office of General Counsel issued on June 28, 2023 indicating that the VA had denied his request for reconsideration of its initial denial of his administrative tort claim related to kidney disease. Dkt. 1 at 3. The Court considers this appeal request part of the Plaintiff's pleadings under Federal Rule of Civil Procedure 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading."). The Defendant attached a copy of the SF-95 as an exhibit to its memorandum in support of its motion to dismiss. Dkt. 17 (Ex. 1). It also attached the VA's initial decision denying Plaintiff's administrative tort claim, dated August 8, 2022, Dkt. 17 (Ex. 2), as well as a copy of an appeal for the denial of the claim that Plaintiff submitted to the VA, dated January 22, 2023. Dkt. 17 (Ex. 3). Plaintiff also attached an "addendum" to his appeal, dated February 6, 2023, as an exhibit to his "Memorandum in Support of Motion to Deny Defendant's Motion to Dismiss." Dkt. 23 (Ex. 5).

When ruling on a motion to dismiss, "it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'"

specifically, his AKI – resulting from the purported failure of medical professionals to diagnose the declining condition of his kidneys in the years leading up to a diagnosis that he received during a visit to the Lynchburg General Hospital in April 2020. Dkt. 17 (Ex. 1 at 1).  Plaintiff's description of the basis of the claim also referred to "three or four incorrect entries" in his health records, but he did not provide specific details about these alleged errors. Dkt. 17 (Ex. 1 at 1).

On August 8, 2022, the VA's Office of General Counsel issued a letter addressed to Plaintiff stating that it had "investigated the facts and circumstances" of his administrative tort claim related to his kidney disease and that its investigation included a review of the claim by a "board-certified primary care physician." Dkt. 17 (Ex. 2 at 1).  The investigation "concluded there was no negligent or wrongful act on the part of a VA employee acting within the scope of employment that caused compensable harm." Dkt. 17 (Ex. 2 at 1). Accordingly, the VA denied the claim.

Plaintiff subsequently submitted an appeal letter to the VA, dated January 22, 2023, Dkt. 17 (Ex. 3), and an accompanying addendum, dated February 6, 2023. Dkt. 23 (Ex. 5). These documents provided additional details about Plaintiff's allegations.

---

*Goines v. Valley Community Services Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d. 700, 705 (4th Cir. 2007)). A document is considered "integral to the complaint" when the complaint "relies heavily upon its terms and effect." *Goines*, 822 F.3d at 166 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Here, documents that were part of the administrative claim are "integral" to Plaintiff's complaint. Plaintiff has not objected to the Defendant's attachment of its exhibits to its memorandum in support of its motion to dismiss, nor has he contested the authenticity of these documents. The Defendant has also not raised any issues regarding the documents Plaintiff submitted that were from his administrative claim process – including the addendum to his appeal and the denial of his appeal.  Although Plaintiff's complaint and amended complaint did not expressly reference all of these various documents – which relate to what he presented to the VA and how his claim moved through the agency review process – he relied upon their effect because his lawsuit is predicated on the VA's denial of his claim. In sum, the Court will take the exhibits and attachments regarding the administrative claim, the appeal, the addendum, and the agency's claim denial letters into consideration in deciding the motion to dismiss because they are "integral" to the Plaintiff's complaint.

4

On June 28, 2023, the VA Office of General Counsel once again denied Plaintiff's claim after reconsidering it. Dkt. 1 at 3. "Our review revealed no evidence of any negligent or wrongful act or omission on the part of a Department of Veterans Affairs (VA) employee acting within the scope of his or her employment that resulted in harm regarding the diagnosis and treatment provided to you[r] kidney disease by providers at the Salem VA Medical Center and its associated VA Clinics," the letter explained. *Id*. The letter advised Plaintiff that further action in the form of a civil action against the United States could be instituted under the Federal Tort Claims Act ("FTCA"). *Id*. The letter indicated that if Plaintiff wanted to initiate a lawsuit, he would need to do so within six months after the date on which a notice of administrative denial of a tort claim is mailed. *Id*. Thus, Plaintiff had six months from June 28, 2023 to file a suit in federal district court.

Before the FTCA's six-month window to bring a lawsuit closed, Plaintiff timely filed a complaint against the United States in this Court on December 13, 2023. Dkt. 1. Shortly thereafter, he filed his amended complaint on December 19, 2023. Am. Compl.[5] (For simplicity, the Court will refer to the amended complaint as the "complaint" throughout this opinion.)

Plaintiff is a *pro se* litigant and the Court understands its obligation to liberally construe his filings, *see, e.g.*, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Nevertheless, the Court notes at the outset that while Plaintiff's complaint and subsequent filings are detailed, they are hard to follow at times and plaintiff's legal theories are difficult to discern.

---

[5] The primary difference between the original and amended complaints is that Plaintiff raised his requested "maximum monetary award" from $2.5 million to $5.5 million. *Compare* Dkt. 1 at 7 and Dkt. 6 at 4. He did not otherwise substantially alter the allegations in his "Statement of Claim."

Still, the Court has identified what appear to be Plaintiff's claims.[6] The Defendant, in its memorandum supporting its motion to dismiss, Dkt. 17 at 2-4, provides a helpful classification of the Plaintiff's claims into seven categories. Dkt. 6. Building on this categorization, the Court has identified the following allegations in Plaintiff's complaint, which he generally describes as a medical "malpractice," Am. Compl. at 4, lawsuit:

1) The failure of the Salem VAMC to diagnose a kidney disorder when there were indications of protein in Plaintiff's urine in February 2016 and March 2019. Am. Compl. ¶¶ 8, 11, and 12.

2) The failure of the Salem VAMC to inform Plaintiff of protein in his urine in February 2016, March 2019, and June 2019. *Id*. ¶¶ 8, 11-12.

3) The failure of the Salem VAMC to take Plaintiff off medications that may have damaged his kidneys and worsened his declining kidney function in the years preceding his diagnosis of acute kidney injury. *Id*. ¶ 8.

4) Inaccurate testing by the Salem VAMC in July 2023 of the protein levels in Plaintiff's urine. *Id*. ¶ 15.

5) The failure of the Salem VAMC to maintain accurate records of Plaintiff's medications, including (a) the delayed recording of lisinopril, which was first prescribed in August 2013 but not recorded on his medication list until October 2016, *Id*. ¶ 6, and (b) a failure to include medications on Plaintiff's medication list that were

---

[6] These claims are raised in the Plaintiff's Amended Complaint. The Court notes that Plaintiff's "Memorandum in Support of Motion to Deny Defendant's Motion to Dismiss," Dkt. 23, contains statements that could be construed as new allegations against the Defendant. The Court emphasizes that such allegations are not considered part of Plaintiff's complaint just because he raised them in a subsequent filing, such as a response to a motion to dismiss. New claims would need to be brought through an amended complaint. *See generally* Fed. R. Civ. P. 15(a) (provisions regarding the amendment of pleadings prior to trial).

prescribed in July 2015, including metformin, prednisone, flunisolide, and Claritin. *Id*.

6) The failure of the Salem VAMC to conduct a second A1C (blood sugar) test to double check the accuracy of an A1C test in July 2015 that led to a diagnosis of diabetes. *Id*. ¶ 7.

7) The failure of the Salem VAMC to maintain accurate records of various conditions, including (a) the failure to list hyperlipidemia on his "problems list" following a February 2013 diagnosis, *id*. ¶ 9, and (b) the failure to record a diagnosis for acute kidney injury in Plaintiff's chart after his April 2020 diagnosis. *Id*. ¶ 13.  (The Court will refer to these as Claims 7(a) and 7(b).)

8) The Salem VAMC prescribed Omeprazole in February 2021 to treat Plaintiff's indigestion, even though Omeprazole was contraindicated for patients who have a kidney disorder called interstitial nephritis. *Id*. ¶ 10.

9) The Salem VAMC failed to perform a biopsy exam in October 2013 that could have detected renal parenchymal diseases. *Id*. ¶ 14.

10) The Salem VAMC misdiagnosed Plaintiff with various conditions: (1) HIV, in December 2017; (2) cervical spondylosis with radiculopathy, in February 2018; (3) circadian rhythm disorder, in December 2018; (4) benign paroxysmal positional vertigo or nystagmus, in April 2020; and (5) chronic kidney disease mineral and bone disorder, in April 2021.[7] *Id*. at 4-5.

---

[7] The Defendant's motion to dismiss states that Plaintiff's purported misdiagnoses by the Salem VAMC include ADHD, major depressive disorder, and delusional disorder in 2000. Dkt. 17 at 3. Plaintiff's complaint briefly discusses these issues in relation to a visit with a psychiatrist in 2000 at Virginia Baptist Hospital. Am. Compl. at 5. He explains that "I was never treated for any type of depression and I was never treated for any type of delusional disorder." *Id*. However, it does not appear that claims related to these purported misdiagnoses are alleged against the United States. Indeed, in Plaintiff's "Memorandum in Support of Motion to Deny Defendant's Motion to Dismiss," he admits that he "was not a member of the VA health-care system in the year 2000" and that he started receiving

Plaintiff's complaint requests three forms of relief: (1) a "maximum monetary award allowed in the amount of $5,500,000.00 … for malpractice;" (2) "100% disability the injury of diabetes that was likely caused by the defendant" and "100% disability for the injury of chronic kidney disease caused by the negligence of the defendant;" and (3) "the privilege of being enrolled in the Veteran's Choice Program which will allow me to seek health care in the community of my choice." *Id*. at 4.

## II. STANDARDS OF REVIEW

Defendant raises three grounds for its motion to dismiss: first, a lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); second, the two-year statute of limitations for FTCA claims; and third, a failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure tests a district court's subject matter jurisdiction. When a party attacks the subject matter jurisdiction of the court under Rule 12(b)(1), the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)).

---

healthcare services from the VA in November 2008. Dkt. 23 at 5. Accordingly, the Court does not consider the purported misdiagnoses arising from Plaintiff's visit with a psychiatrist in 2000 to be among Plaintiff's claims against the Defendant.

The Plaintiff, as the party asserting the court's jurisdiction, bears the burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A trial court may consider evidence and matters outside the complaint on a Rule 12(b)(1) motion without converting the proceeding to one for summary judgment. *Id.*

As discussed below, the Defendant's subject matter jurisdiction arguments are grounded in the FTCA's requirement that a claimant exhaust his administrative remedies before bringing a lawsuit against the United States. More specifically, the claimant must first present the claim to the appropriate federal agency and initiate litigation only after the claim has been denied by the agency. *See* 28 U.S.C Section 2675(a). The mandate in 28 U.S.C. § 2675(a) that claimants file an administrative claim "is jurisdictional and may not be waived." *Kokotis v. U.S. Post. Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)); *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994).[8]

**B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim and Defendant's Statute of Limitations defense**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. It does not, however, "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*,

---

[8] While the two-year state of limitations in the FTCA is not jurisdictional, *see United States v. Wong*, 575 U.S. 402, 405 (2015), the prevailing view is that 28 U.S.C. § 2675(a)'s administrative exhaustion requirement is jurisdictional in nature. *See Campos v. United States*, 682 F.Supp. 3d. 541, 545 n.2 (W.D. Va. 2023); *Rogers v. Chapman*, No. 8:18-cv-03154, 2019 WL 3225750, at *4, n. 3 (D. Md. July 17, 2019) (collecting cases from different circuits); *Wright v. United States*, No. 22-6358, 2023 WL 2010984, at *1 (4th Cir. Feb. 15, 2023) (per curiam and unpublished).

178 F.3d 231, 243 (4th Cir. 1999)). To state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), accepting all well pleaded factual allegations in the complaint as true and taking all reasonable inference in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). A court need not accept as true "legal conclusions, elements of a cause of action, … bare assertions devoid of further factual enhancement, … unwarranted inferences, unreasonable conclusions, or arguments." *Richardson v. Shapiro*, 751 F. App'x 346, 348 (4th Cir. 2018) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal quotation marks omitted)). Courts are to construe the filings of *pro se* litigants liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1970), and though a *pro se* complaint may be inartfully pleaded, it "must be held to less stringent standards than formal pleadings drafted by lawyers." *King*, 825 F.3d at 214. Nevertheless, a *pro se* complaint must state a plausible claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Defendant also raises a statute of limitations argument against several of Plaintiff's claims. Dkt. 17, at 9-11. A Rule 12(b)(6) motion generally "does not resolve contests surrounding … the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) and the assertion that a plaintiff's claim is time-barred is an affirmative defense. However, the U.S. Court of Appeals for the Fourth Circuit has noted that "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Richmond, Fredericksburg &*

*Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in original); *see also Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint."). For the sake of clarity, the Court will separate its analysis of the statute of limitations issues from the rest of its Rule 12(b)(6) analysis in Part III.

### III. ANALYSIS

### A. The Court lacks subject matter jurisdiction over claims that Plaintiff failed to present to the VA during its review of his administrative claim

Subject matter jurisdiction refers to whether a court has the power to hear a particular claim. While the Federal Torts Claim Act authorizes federal district courts to hear personal injury claims against the United States, it also contains provisions limiting what kinds of claims a court may hear. As discussed below, the concept of administrative exhaustion embedded in the FTCA curtails the range of claims that Plaintiff may bring in this action.

Plaintiff sues the Defendant for damages for his personal injuries under the limited waiver of sovereign immunity embodied in the FTCA. The United States is immune from suit except insofar as it consents to be sued. Any waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Because the circumstances supporting a waiver of sovereign immunity "must be scrupulously observed and not expanded by the courts," a claimant accordingly "must file an

FTCA action in careful compliance with its terms." *Kokotis v. U.S. Post. Serv.*, 223 F.3d 275, 278 (4th Cir. 2000).

"[A] tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." *United States v. Wong*, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)).

The FTCA also includes a requirement that a claimant exhaust his administrative remedies before initiating litigation. More specifically, the Act contains the following provision:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). In describing the purpose of this provision of the FTCA, the U.S. Supreme Court has explained that "Congress intended to require *complete exhaustion* of Executive remedies before invocation of the judicial process." *McNeil v. United States*, 508 U.S. 106, 112 (1993) (emphasis added). Because the FTCA "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies," *id*. at 113, a court must consider whether a claimant first brought his claims through the proper administrative process. When a plaintiff fails to file a claim with the proper administrative agency, "dismissal is mandatory." *Henderson v. U.S.*, 785 F.3d 121, 124 (4th Cir. 1986). Therefore, the Court will identify the claims Plaintiff presented to the VA and those he did not.

The Code of Federal Regulations provides that a claim is presented to a federal agency when the agency receives "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of

12

property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R.

§ 14.2(a).

Here, Plaintiff submitted his SF-95 to the VA on April 4, 2022. Dkt. 17 (Ex. 1 at 1). In

his description of the basis of the claim, Plaintiff wrote as follows:

> Acute Kidney injury. I was prescribed Metformin and linsinopril among other drugs, by my providers at the Lynchburg CBOC.[9] I think I had began taking the medicines around 2012. I was not informed of the decline in my Kidney function until my GFR had reached the level of 51. My kidney function seems to have been declining over a period of years and I was not informed of my injury until I visited the emergency room. My providers never referred to my kidney injury by the title of AKI, but referred to my injury as stage 3 kidney disease although I never had stage 1 or stage 2 kidney disease. I have been trying to get an understanding of my condition since the day of my diagnosis 04/14/2020. Finally I decided to look at my health records on myhealthyvet to find three or four incorrect entries on my record.

*Id*. He attached to the SF-95 what appears to be discharge instructions issued by the Lynchburg

General Hospital's Emergency Department for a visit on April 14, 2020. *Id*. at 3. The document

lists Plaintiff's "diagnosis" as "Acute kidney injury; Hyperglycemia; Hypokalemia; Vertigo." *Id*.

The document further advised Plaintiff to "follow up with primary care provider" within a week

for "reevaluation and repeat bloodwork." *Id*. at 4. It included educational materials about high

blood sugar (hyperglycemia), hypokalemia (described as "low level of potassium in the blood"),

and dizziness, *Id*. at 4-8, as well as a note that Plaintiff had been prescribed a medication called

meclizine for dizziness. *Id*. at 9.

After the VA's Office of General Counsel denied Plaintiff's claim, Dkt. 17 (Ex. 2 at 1),

Plaintiff submitted a letter to the VA, dated January 22, 2023, requesting "an appeal for the

denial of the claim[.]" Dkt. 17 (Ex. 3 at 1). This "appeal for reconsideration" (which the Court

will refer to as the "appeal letter"), *Id*. at 2, offered more detailed allegations about the

---

[9] The Court understands to be a reference to the Lynchburg Community Based Outpatient Clinic ("CBOC") associated with the Salem VAMC.

circumstances surrounding his April 2020 diagnosis of AKI. Plaintiff alleged that his providers "did not inform [him] of [his] kidney function decline as the kidney function decline was occurring over a long period of time as indicated by [his] lab results." *Id.* at 1. He alleged that his providers failed to discuss effects that medications[10] were having on his kidneys and that following his April 2020 diagnosis, his providers "never acknowledged the diagnosis" and "failed to offer me any treatment for AKI." *Id.* at 1. Although a document entitled "Discharge Instructions," dated April 14, 2020, listed "[a]cute kidney injury" in the "diagnosis," *Id.* at 7, Plaintiff alleged that the VA's records failed to include this diagnosis and that his AKI "was left untreated" until it developed into stage 3 chronic kidney disease. *Id.* at 1.

Plaintiff also submitted an addendum to his appeal letter. In this addendum, dated February 6, 2023, Plaintiff stated that attached medical records indicated the presence of kidney damage in March and June of 2019. Dkt. 23 (Ex. 5). "The significance of these lab tests was never discussed with me in anyway, by my providers," Plaintiff wrote. *Id.* He also enclosed a February 2010 lab result that he stated showed normal kidney functions as well as normal A1C

---

[10] It is somewhat unclear from the appeal letter and other documents submitted to the VA which medications Plaintiff alleged caused his declining kidney functions. His initial description of the claim in his SF-95 refers to prescriptions issued by providers at the Lynchburg CBOC. Plaintiff specifically names metformin and lisinopril, which the Court takes judicial notice as drugs used to treat type 2 diabetes and high blood pressure, respectively. *See* NAT'L LIBRARY MED., METFORMIN, MEDLINEPLUS, https://medlineplus.gov/druginfo/meds/a696005.html (last visited Sept. 12, 2024); NAT'L LIBRARY MED., LISINOPRIL, MEDLINEPLUS, https://medlineplus.gov/druginfo/meds/a692051.html (last visited Sept. 12, 2024). He also attached a document to the appeal letter what appears to be a medical record from the Lynchburg CBOC for a visit on February 15, 2019 (he labels this "Section 1"). Dkt. 17 (Ex. 3, § 1). This record refers to a time in 2015 where Plaintiff had "significantly increased A1C" (the Court takes judicial notice that "A1C" commonly refers to a measurement of an individual's blood glucose or blood sugar levels, *see* NAT'L LIBRARY MED., A1C, MEDLINEPLUS, https://medlineplus.gov/a1c.html (last visited Sept. 12, 2024)) and received his first prescription of metformin. The record then notes that in August 2018, Plaintiff "was told that his kidney function was too low for Metformin" and he switched to a different drug called glipizide (the record does not specify who conveyed this information to Plaintiff). Dkt. 17 (Ex. 3, § 1). The Court takes judicial notice that glipizide is a drug used to treat type 2 diabetes. *See* NAT'L LIBRARY MED., GLIPIZIDE, MEDLINEPLUS, https://medlineplus.gov/druginfo/meds/a684060.html (last visited Sept. 12, 2024). While taking glipizide, Plaintiff reportedly developed an itch and rash and it went away after he stopped taking glipizide, according to the February 2019 medical record. Dkt. 17 (Ex. 3, § 1).

and glucose levels. *Id*. He wrote that 2010 was "around the time" that his providers started him on new medications. *Id*.[11]

After reconsidering Plaintiff's claim, the VA Office of General Counsel issued a denial letter on June 28, 2023. Dkt. 1 at 3.

The Defendant argues that Plaintiff failed to raise most of the claims in his complaint in his prior administrative claim and that the Court accordingly lacks the subject matter jurisdiction to hear such claims. Dkt. 17 at 7. In response, Plaintiff contends that the reason he did not include all his current claims in the original administrative claim is that he was "not aware of all of the evidence of malpractice that existed in my health records when I filed my claim." Dkt. 23, at 3. But this does not exempt Plaintiff from the FTCA's express statutory requirement that all claims be presented to the VA before initiating a FTCA lawsuit in this Court. 28 U.S.C. § 2675(a). Moreover, Plaintiff has also not asserted that he lacked access to relevant records or was otherwise prevented from presenting the allegations through the administrative claim process (except Claim 4 involving a matter that arose after Plaintiff filed the administrative claim in April 2022) to the VA.

Moreover, as Defendant notes in its reply, Dkt. 24 at 2, it appears that Plaintiff may have conflated evidence of malpractice with actual claims of malpractice in his "Motion to Deny Motion to Dismiss" and supporting memorandum. Dkts. 22-23. Even if Plaintiff compiled medical records and submitted those to the VA with his SF-95 and appeal materials, he would still need to allege a breach of a standard of care in order to assert a medical malpractice claim.

---

[11] Plaintiff's "Memorandum in Support of Motion to Deny Defendant's Motion to Dismiss" features an exhibit that includes the addendum and what appears to be the referenced lab results from the Salem VA Medical Center with metrics from 2019 and 2010. Dkt. 23 (Ex. 5). However, the "lab results" include a notation indicating they were printed on September 7, 2023 – after the date of the February 6, 2023 addendum – so it is unclear to the Court if these were the same results submitted to the VA on February 6, 2023. *Id*.

*See Bitar v. Rahman*, 272 Va. 130, 137-38 (2006) (describing elements of a medical malpractice claim under Virginia law). Evidence such as medical records can certainly support a medical malpractice claim, but such material, by itself, is not a claim. Indeed, the purpose of the FTCA's requirement for the presentation of a claim to a federal agency is to provide the government with an opportunity to "investigate, evaluate and consider settlement of a claim." *Davis v. U.S.*, No. 7:10-CV-00005, 2010 WL 2754321, at *3 (W.D. Va. July 12, 2010) (quoting *Keene Corp. v. United States*, 700 F.2d 836, 842 (2d Cir. 1983)). The FTCA does not, however, "require an agency to 'undertake an independent search for injuries or theories of liability that are not closely related to the matters described in the claim,'" nor does the mere fact that a claim is filed pursuant to 28 U.S.C. § 2675(a) put the government "on notice of all the facts contained in voluminous records presented by a claimant, if the claimant has not pointed to specific sources of injury." *Henahan v. United States*, No. 7:16-CV-00042, 2016 WL 4540882, at *4 (W.D. Va. Aug. 30, 2016) (quoting *Burchfield v. United States*, 168 F.3d 1252, 1256-57 (11th Cir. 1999)). An administrative claim "must do more than cause 'the government to sift through the record.'" *Henahan*, 2016 WL4540882, at *4 (quoting *Richland-Lexington Airport Dist. v. Atlas Props., Inc.*, 854 F. Supp. 400, 412 (D.S.C. 1994)).

Based on these legal principles and the Court's review of Plaintiff's SF-95 and related documents (including the appeal letter, dated January 22, 2023, and the addendum to the appeal, dated February 6, 2023), the Court finds that Plaintiff failed to raise Claims 4 through Claim 7(a), and Claims 8 through 10 in his administrative claim. The Court accordingly lacks subject matter jurisdiction to hear such claims. However, as discussed in the second part of the analysis to follow, Claims 1 through 3 and 7(b) were sufficiently raised in the administrative claim process such that the Court may hear them in the instant case.

16

*1. Claims that Plaintiff failed to present to the VA and are barred by the FTCA's administrative*

*exhaustion requirement (Claims 4 through 7(a) and Claims 8 through 10)*

In **Claim 4**, Plaintiff alleges inaccurate testing by the Salem VAMC in July 2023 of

protein levels in Plaintiff's urine. Am. Compl. ¶ 15. However, this purported malpractice

occurred *after* Plaintiff filed his SF-95 in April 2022 and was not presented to the VA. Therefore,

the Court lacks subject matter jurisdiction to hear the claim.

In **Claim 5**, Plaintiff alleges that the Salem VAMC failed to maintain accurate records of

Plaintiff's medications, including (a) the delayed recording of lisinopril, which was first

prescribed in August 2013 but not recorded on his medication list until October 2016, *id.* ¶ 6, and

(b) a failure to include medications on Plaintiff's medication list that were prescribed in July

2015, including metformin, prednisone, flunisolide, and Claritin. *Id.* ¶ 7. While Plaintiff's SF-95

refers to "three or four incorrect entries" in his medical record, he failed to provide details to the

VA about these purported inaccuracies. Dkt. 17 (Ex. 1 at 1).  Neither the appeal letter, Dkt. 17

(Ex. 3 at 1), nor addendum to the appeal, Dkt. 23 (Ex. 5 at 1) address a failure to properly

document Plaintiff's medications. Thus, the VA lacked notice of this claim and the Court does

not have subject matter jurisdiction to hear these claims in the present case.

Similarly, **Claim 7** alleges a failure of the Salem VAMC to maintain accurate records of

the Plaintiff's various conditions, including (a) the failure to list hyperlipidemia on his "problems

list" following a February 2013 diagnosis, Am. Compl. ¶ 9, and (b) the failure to record a

diagnosis for acute kidney injury in Plaintiff's chart after his April 2020 diagnosis, *Id.* ¶ 13. The

purported failure to list hyperlipidemia in Claim 7(a) was not presented to the VA and must be

dismissed on administrative exhaustion grounds. However, as discussed below, Plaintiff *did*

include relevant allegations regarding Claim 7(b) to the VA in his request for reconsideration, Dkt. 17, Ex. 3, at 1, and this claim can be raised in the present case.

**Claim 6** alleges that the Salem VAMC should have conducted a second blood sugar test to ensure the accuracy of an initial test in July 2015 that led to a diagnosis of diabetes. Am. Compl. ¶ 7 This claim was not raised in the SF-95 or related materials presented to the VA. Because this claim was not submitted to the agency's administrative claim process, this Court also cannot consider it.

**Claim 8** alleges that the Salem VAMC prescribed a medication called Omeprazole in February 2021 to treat indigestion, despite this medication being contraindicated for patients with a kidney disorder called interstitial nephritis. *Id*. ¶ 10.  This issue – which post-dates the Plaintiff's 2020 diagnosis of acute kidney injury – was not raised in Plaintiff's administrative tort claim. While the administrative claim largely focused on a failure to diagnose and inform Plaintiff of declining kidney functions prior to his April 2020 diagnosis, it appears that Plaintiff alleged in the SF-95 and the appeal letter that certain medications may have worsened the condition of his kidneys and that health care providers at the Salem VAMC should have alerted him to the medications' dangerous effects. Dkt. 17 (Ex. 1 at 1; Ex. 3 at 1). Plaintiff impliedly made this argument in the SF-95, Dkt. 17 (Ex. 1 at 1), and expressly elaborated on it in his appeal letter, where he asserted that his providers "did not inform [him] of [his] kidney function decline as the kidney function decline was occurring over a long period of time as indicated by [his] lab results." Dkt. 17 (Ex. 3 at 1). Still, Plaintiff's allegations about medication were primarily related to the period prior to his diagnosis of acute kidney injury in April 2020. In his discussion of the period following his April 2020 diagnosis at the Lynchburg General Hospital, he stated that "[a]ccording to the medical literature, doctors were supposed to stop the

18

medication when kidney function decline was first indicated." *Id*. But Plaintiff did not specify what medication was at issue, nor did he refer to a prescription that was issued in February 2021. Instead, it seems he was referring to medications he was taking at the time of his diagnosis in April 2020 – and these would not have included Omeprazole because it was not prescribed until the following year. Am. Comp. ¶ 10 (stating plaintiff was mailed Omeprazole on February 21, 2021). Accordingly, the claim regarding Omeprazole was not raised in the administrative claim process and cannot be raised here.

**Claim 9** alleges that the Salem VAMC failed to perform a biopsy exam in October 2013 that could have detected renal parenchymal diseases. Am. Compl. ¶ 14.  However, this failure to perform a particular exam was not presented in the SF-95, Dkt. 17 (Ex. 1 at 1), and is outside of the general scope of conduct alleged in the administration claim. More specifically, a premise of the SF-95, appeal letter, and addendum, Dkt. 17 (Exs. 1, 3); Dkt. 23 (Ex. 5), is that personnel at Salem VAMC possessed information about Plaintiff's declining kidney function and failed to act appropriately in response to it. No such information could have arisen from an exam that was never performed. Because Plaintiff failed to raise this issue in his administrative claim, the Court cannot consider it here.

Finally, the allegations of **Claim 10** – that the Salem VAMC misdiagnosed Plaintiff with a multitude of conditions, Am. Compl. at 4-5 – were simply not raised in the SF-95 or appeal documents. Dkt. 17 (Exs. 1, 3); Dt. 23 (Ex. 5). There are no allegations in the materials presented to the VA that allege misdiagnoses of HIV, cervical spondylosis with radiculopathy, circadian rhythm disorder, benign paroxysmal positional vertigo or nystagmus, or chronic kidney disease

mineral and bone disorder.[12] The Court may not hear these claims as part of the Plaintiff's complaint because he failed to present them to the VA.

Plaintiff has asserted several claims against the Defendant in this case for the first time. However, in a FTCA case such as this one, 28 U.S.C. § 2675(a) requires a plaintiff to initially raise his claims to the relevant federal agency *before* proceeding with a lawsuit in federal court. *See McNeil v. United States*, 508 U.S. 106, 112 (1993) (explaining the FTCA's administrative exhaustion requirement).  Because 28 U.S.C. § 2675(a)'s mandate that a Plaintiff exhaust his administrative remedies "is jurisdictional and may not be waived," *Kokotis v. U.S. Post. Serv.*, 223 F.3d 275, 278 (4th Cir. 2000) (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)), a federal district court cannot hear claims that fail to conform to this requirement. Here, Plaintiff failed to present Claims 4 through 6, Claim 7(a), and Claims 8 through 10 to the VA as part of his administrative claim and subsequent request for reconsideration by the agency. The Court accordingly lacks subject matter jurisdiction to hear them. Pursuant to Fed. R. Civ. P. 12(b)(1), the Court grants Defendant's Motion to Dismiss with respect to these claims.[13]

### 2. Claims that Plaintiff presented to the VA (Claims 1 through 3 and Claim 7(b))

Based on a review of Plaintiff's SF-95 and other materials Plaintiff submitted to the VA for its consideration – including the appeal letter and the addendum – the Court finds that

---

[12] Plaintiff stated in the appeal letter that he attached "lab results for the days just prior to the diagnosis of chronic kidney disease mineral and bone disorder dated 8/27/2021" and alleged that Plaintiff's providers "never discussed a diagnosis of mineral and bone disease with [him] in any context." Dkt. 17 (Ex. 3 at 1-2). Still, he did not allege that the Salem VAMC misdiagnosed him with such a condition.

[13] The Defendant argues in its Motion to Dismiss that even if Plaintiff's administrative claim could have been read to include all of the allegations in his Complaint, the FTCA's two-year statute of limitations would bar several of the claims, including those related to a failure to perform a biopsy in 2013 and various purported misdiagnoses. Dkt. 17 at 9-11. Because the Court concludes that it lacks subject matter jurisdiction over what it labels Claims 4 through 6, Claim 7(a), and Claims 8 through 10, it declines to address statute of limitations arguments raised by the Defendant with respect to these claims.

Plaintiff did comply with the FTCA's administrative exhaustion requirements with respect to Claims 1 through 3, as well as Claim 7(b).

As noted earlier, the central claim of the SF-95, dated April 4, 2022, is that the Salem VAMC failed to diagnose and inform Plaintiff of the decline in his kidney function in the years before he visited an emergency room in April 2020 and was formally diagnosed with AKI. This argument is expressly made in the SF-95, as well as the appeal letter and addendum to that letter. Dkt. 17 (Exs. 1, 3); Dkt. 23 (Ex. 5). Relatedly, Plaintiff seems to have suggested in his SF-95 that medications he was prescribed by VA providers contributed to declining kidney functions, Dkt. 17 (Ex. 1 at 1). His appeal letter clarified this argument and made it more explicit when he alleged that his providers "never discussed with [him] the effects that the medications were having on [his] kidney function." Dkt. 17 (Ex. 3 at 1).

The Defendant concedes that **<u>Claims 1 and 2</u>** – regarding purported failures to inform Plaintiff about his kidney function and disease – were "sufficiently presented in the SF-95." Dkt. 17 at 8. Based on the crux of the allegations raised in Plaintiff's administrative claim, the Court concurs.[14]

The Court also finds that **<u>Claim 3</u>** – alleging that the Salem VAMC failed to take Plaintiff off medications that may have damaged his kidneys and worsened his declining kidney function in the years preceding his diagnosis of acute kidney injury, Am. Compl. ¶8 – was presented in

---

[14] The Court notes that it is unclear from the record whether Plaintiff presented specific allegations regarding a lab test conducted on February 10, 2016 and related materials (such as notes and a letter from February 11, 2016) that Plaintiff references in his complaint. Am. Compl. ¶ 8. By contrast, the addendum to the appeal letter and the attached documents indicate that the Plaintiff did present the March and June 2019 lab results to the VA as part of the administrative claim. Dkt. 23 (Ex. 5). Nevertheless, the purported failure of the Defendant to inform Plaintiff of protein in his urine and possible kidney damage after the February 2016 lab test falls under the broader claim that Plaintiff made in his SF-95, which is that his kidney function was "declining over a period of years" and the Salem VAMC failed to keep him informed. Dkt. 17 (Ex. 1 at 1). The addendum also put the Defendant on notice of Plaintiff's allegation that measurements of kidney function indicated a decline between 2010 and 2019. Dkt. 23 (Ex. 5). Accordingly, the Court finds that Claims 1 and 2 were presented to the VA during the administrative claim process.

Plaintiff's administrative claim. As noted above, Plaintiff alluded to this claim in his SF-95 and more clearly articulated this claim to the VA in his appeal letter. In the letter, the plaintiff asserted that VA healthcare providers never discussed with him the effects of the medications on kidney functions and that his providers "should have alerted [him] that taking the medications could contribute to possible permanent damage to [his] kidneys." Dkt. 17 (Ex. 3). Thus, he presented a claim to the VA about the possible side effects of his medications and can pursue such a claim in this Court.

Finally, the Court finds that Plaintiff presented **Claim 7(b)** to the VA during its review of his administrative claim. This claim alleges that the Salem VAMC failed to record a diagnosis for AKI in Plaintiff's chart after his April 2020 diagnosis. Am. Compl. ¶ 13. Although Plaintiff's original SF-95 vaguely referred to "three or four incorrect entries" in his medical record, Dkt. 17 (Ex. 1 at 1), he specifically alleged in the appeal letter that his providers at the VA "failed to record the diagnosis" of his acute kidney injury in his medical records. Dkt. 17 (Ex. 3 at 1). More specifically, during a visit to the Lynchburg General Hospital on April 14, 2020, Plaintiff received a diagnosis of acute kidney injury and this was documented on his discharge instructions from the hospital. *Id*. In his appeal letter, Plaintiff alleged the Defendant subsequently failed to note this diagnosis in Plaintiff's VA medical records and his condition went untreated. *Id*. Therefore, this claim was also sufficiently presented to the VA and can be raised in this litigation.

In sum, the Plaintiff exhausted his administrative remedies with respect to Claims 1 through 3 and Claim 7(b). Because the VA issued a final decision denying the administrative claim after its reconsideration, Dkt. 1 at 3, Plaintiff acted within his rights under the FTCA to

bring these claims as part of his complaint in the present case. *See* 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a). Consistent with its subject matter jurisdiction, the Court may hear these claims.

## B. The FTCA's two-year statute of limitations bars Claim 2

The Defendant argues that the FTCA's two-year statute of limitations bars Plaintiff from bringing **Claim 2**, which alleges that the Salem VAMC failed to inform Plaintiff of protein in his urine in February 2016, March 2019, and June 2019.[15] Am. Compl. ¶¶ 8, 11-12.

Under federal law, a tort claim against the United States is "forever barred" unless it is first presented to a federal agency in writing "within two years after such claim accrues." 28 U.S.C § 2401(b).

As the Fourth Circuit has explained, under § 2401(b), the statute of limitations for a claim accrues "when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." *Gould v. U.S. Dept. of Health & Human Services*, 905 F.2d 738, 742 (4th Cir. 1990) (citing *United States v. Kubrick*, 444 U.S. 111 (1979)). "Actual knowledge of negligent treatment is not necessary in order to trigger the running of the statute of limitations; rather, once the claimant is 'in possession of the critical facts that he has been hurt and who has inflicted the injury,' the claimant has a duty to make diligent inquiry into whether the injury resulted from a negligent act." *Hahn v. U.S.*, 313 Fed. Appx. 582, 585 (4th Cir. 2008) (unpublished) (quoting *Kubrik*, 444 U.S. at 122). "The burden is on plaintiffs to show that due

---

[15] The Court acknowledges that the Defendant may later argue that some of Plaintiff's other claims are barred by the statute of limitations. The Defendant alleges in footnote 5 of its memorandum in support of its motion to dismiss that dates contained in Plaintiff's complaint are inaccurate and that the Defendant "reserves those arguments for summary judgment" if the Court denies the motion to dismiss. Dkt. 17 at 9. For now, the Court only considers the Defendant's statute of limitations argument regarding Claim 2 because it is the only claim of those Defendant challenges in its motion as time-barred that the Court has subject matter jurisdiction to hear.

diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable." *Gould*, 905 F.2d at 745-46.

In the medical malpractice context, the Fourth Circuit has explained that a claimant need not know the "precise medical reason" for an injury for a claim to accrue. *Kerstetter v. U.S.*, 57 F.3d 362, 364-65 (4th Cir. 1995). Instead, the statute of limitations clock begins ticking when the knows – or reasonably should have known – that some aspect of his treatment caused an injury. *Id.* ("So long as the plaintiff knows 'the critical fact' of 'who has inflicted the injury,' he can act to protect his rights by inquiring whether the injury was inflicted negligently. If he comes to suspect that it was, then he can file suit even before he discovers the precise medical cause of the operation's failure. After all, it might not be until discovery that he gains a satisfactory appreciation of the immediate cause of his injury."); *see also Hahn v. U.S.*, 313 Fed. Appx. 582, 585 (2008) (unpublished).

Defendant argues in its motion to dismiss that **Claim 2** should be barred as untimely because the purported injury – a failure to provide urine test results – accrued on the dates that such tests were conducted in February of 2016 and March and June of 2019. Dkt. 17 at 9-10. More specifically, Defendant asserts that "Smith's claim … accrued on those dates because he had to give urine for the urinalysis and when he did not receive the test results back, his cause of action accrued." *Id*. Therefore, the Defendant argues that the statute of limitations ran on these claims in February 2018 and March and June of 2021. *Id*. at 10. Plaintiff does not seem to dispute this line of argument. Instead, he makes a general argument that his claims are not time-barred because (1) the VA did not deny his claim based on the expiration of the statute of limitations period, Dkt. 22 at 1, and (2) the claims "are evidence of malpractice that has taken place over the years of [his] medical care at the VA." Dkt. 23 at 3. In its reply, Defendant

contends that Plaintiff has failed to explain why any claim that accrued over two years before he filed his administrative claim is not barred and rejects the argument that the government is somehow barred from raising defenses in this litigation that were not presented in the VA's prior denials of the administrative claim. Dkt. 24 at 3.

The Court finds the Defendant persuasive on these points. Even if Plaintiff has produced what he believes to be evidence of medical malpractice, he is still obligated under the statute to bring claims within two years of the purported injury. 28 U.S.C § 2401(b). Moreover, after the government investigates and renders a decision on an administrative claim, it is not bound in subsequent litigation to only those defenses raised in an agency's denial of a claim. There is no language in the FTCA that precludes the government from raising such defenses. *See also Hazel v. United States*, No. 1:23-cv-01272, 2023 WL 4488300, at *2 (D. D.C. June 6, 2023) (explaining that when a federal agency investigates a claim under the FTCA, "it does not waive, and indeed retains, all of its potential defenses, including that of sovereign immunity."). Here, the VA's Office of General Counsel twice denied Plaintiff's administrative claim[16] and both times based its decision on what it concluded was an absence of negligent or wrongful conduct on the part of a VA employee acting within the scope of employment. Dkt. 17 (Ex. 2); Dkt. 1 at 3. Although these letters did not cite the FTCA's statute of limitations as a rationale for rejecting Plaintiff's administrative claims, that omission does not prevent the Defendant from arguing in the present case that Plaintiff's claims are time-barred. Here, the asserted injury of not receiving test results accrued when the Salem VAMC failed to inform Plaintiff of what it detected in his urine in February of 2016 and March and June of 2019. Because Plaintiff presented his

---

[16] The VA Office of General Counsel issued a letter on August 8, 2022 that denied Plaintiff's administrative claim as raised in his SF-95. Dkt. 17 (Ex. 2). Then, on June 28, 2023, the same office issued a second letter that also denying Plaintiff's claim following its reconsideration of his claim. Dkt. 1 at 3.

administrative claim to the VA in April of 2022 – over two years after this purported conduct – the claims are time-barred under the FTCA. Accordingly, the Plaintiff cannot bring Claim 2 as part of this case and the Court must grant Defendant's motion to dismiss with respect to this claim.

### C. Plaintiff's complaint states a claim with respect to Claims 1 and 3, but not Claim 7(b)

The Federal Rules of Civil Procedure require a plaintiff to include in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As explained earlier, for a plaintiff to successfully state a claim, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a judge is not required to accept as true "legal conclusions, elements of a cause of action, … bare assertions devoid of further factual enhancement, … unwarranted inferences, unreasonable conclusions, or arguments." *Richardson v. Shapiro*, 751 F. App'x 346, 348 (4th Cir. 2018) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal quotation marks omitted)).

Courts also have a duty to liberally construe pro se pleadings. Still, "a plaintiff must provide enough detail to illuminate the nature of the claim and allow defendants to respond." *Chitty v. Liberty University*, No. 6:13-CV-00043, 2013 WL 3877664, at *1 n.2 (W.D. Va. July 25, 2013). Indeed, "[a] complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading

requirements." *Id*. at *1. A district court is "not obliged to ferret through a complaint, searching for viable claims." *Id.* at *1 n.2

Defendant argues that Plaintiff's complaint should be dismissed in its entirety because it fails to assert any claims upon which relief can be granted. Dkt. 17 at 11. Moreover, to the extent that Plaintiff has alleged medical malpractice by the Salem VAMC, the Defendant argues that any such claims should fail because plaintiff has not alleged the required elements of a medical malpractice cause of action.[17] *Id*. at 12-13.

The Plaintiff, for his part, argues that he properly stated a claim for relief because he (1) "used the complaint form for the PRO SE litigant" when he filed his complaint in this Court and (2) the Defendant "gave [him] permission to seek relief in federal court for my claim that [he] filed with the VA, which was considered to be malpractice." Dkt. 23 at 3.  But, as the Defendant correctly explains in its reply, Plaintiff was still required to follow the Federal Rules of Civil Procedure and the provisions of the FTCA when bringing his case in this Court. Dkt. 24 at 4. Even if a plaintiff uses a pro se district court form when filing a lawsuit, the plaintiff must still follow Rule 8's requirement that he include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.  8(a)(2); *see also Warren v. Tri Tech Laboratories, Inc.*, 993 F.Supp. 2d. 609, 613 n. 3 (W.D. Va. 2014) (explaining that while a court "must provide leeway to a *pro se* plaintiff, this 'leeway must be tempered to require the Plaintiff to comply with ... the pleading requirements of Rule 8'" (quoting *Davis v. Bacigalupi,* 711 F.Supp.2d 609, 615 (E.D. Va. 2010))). Additionally, the agency's letters rejecting Plaintiff's administrative claim merely advised Plaintiff of his right to initiate a lawsuit in federal court within six months of the denial. Dkts. 17 (Ex. 2); Dkt.1 at 3. Such notice of Plaintiff's rights

---

[17] As discussed later, Virginia substantive law provides the elements of a medical malpractice claim.

under the FTCA did *not* exempt Plaintiff from the requirement that all parties must adhere to the Federal Rules of Civil Procedure, including its pleading requirements.

The Court construes Plaintiff's complaint as a medical malpractice case because he has repeatedly characterized his claims as such,[18] and, more importantly, the substance of his allegations seems consistent with the general claim he makes throughout his filings that medical personnel at the VAMC engaged in malpractice with respect to the condition of his kidneys. *See Caldwell v. U.S. Department of Education*, 816 Fed. Appx. 841, 842 (4th Cir. 2020) (per curiam and unpublished) (explaining that the "substance" of pro se pleadings, "rather than their labels," should be "determinative" in construing such pleadings).

Under the FTCA, the Defendant can be liable for personal injury claims, such as medical malpractice, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). This is understood to mean that state law is "the source of substantive liability under the FTCA." *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994); *see also Pledger v. Lynch*, 5 F.4th 511, 522 (4th Cir. 2021). To bring a medical malpractice claim under Virginia law, "a plaintiff must establish (1) the standard of care; (2) breach of that standard; and (3) that the breach was a proximate cause of the injury." *Boden v. United States*, No. 7:18-cv-00256, 2022 WL 843923, at *17 (W.D. Va. Mar. 21, 2022) (citing *Bitar v. Rahman*, 272 Va. 130, 137-38 (2006)).

At this stage of the proceedings, the Court that Plaintiff has sufficiently plead Claims 1 and 3 to state plausible medical malpractice causes of action.

Claim 1 alleges that the Salem VAMC failed to diagnose a kidney disorder when there were indications of protein in Plaintiff's urine in February 2016 and March 2019. Am. Compl. ¶¶

---

[18] For example, in the section of his complaint entitled, "REQUEST FOR RELIEF," the Plaintiff twice refers to the Defendant's conduct as "malpractice." Am. Compl. at 4.

8, 11-12. The harm that Plaintiff alleges is that his undiagnosed kidney condition developed into what was later diagnosed as acute kidney injury and, eventually, chronic kidney disease, which he asserts "could have been prevented if [he] had received the proper health care." *Id*. at 4 and ¶¶ 8, 11-13.  He also alleges that he now has a lower life expectancy because of his chronic kidney disease. *Id*. at 4. Although Plaintiff does not use formal legal terminology such as a "standard of care," he notes what seems to be a purported standard in describing the February 2016 and March 2019 urine tests. He also alleges that the Defendant failed to adhere to, or breached, such a standard. Regarding the February 2016 urine test, Plaintiff asserts that Defendant "was responsible for locating the cause of protein in my urine and stopping the insult to my kidneys." *Id*. ¶ 8. With respect to the March 2019 test, Plaintiff asserts that Defendant was "responsible to locate the cause of protein leaking into [his] urine" and "responsible for mitigating the cause of protein leaking into [his] urine." *Id*. ¶ 11. It can be reasonably inferred from the complaint that Plaintiff alleges Defendant took no steps to diagnose kidney issues in response to these urine tests because Plaintiff contends that Defendant never alerted him to his declining kidney functions. Liberally construed, the complaint's statements regarding the urine tests could be understood as alleging (1) that the relevant standard of care is that a reasonably prudent health care provider would investigate the source of protein detected in urine tests, and (2) that Defendant's purported inaction breached this standard. It is reasonable to infer that had Defendant taken more responsive actions, such as determining the cause of protein in Plaintiff's urine, it would have constituted the "proper health care" that would have potentially prevented Plaintiff's development of chronic kidney disease. *Id*. at 4. In sum, Plaintiff has alleged enough facts to state a medical malpractice claim arising from Defendant's alleged inaction regarding the urine tests.

The Court also finds that the Plaintiff's complaint states a medical malpractice claim arising from the purported failure of the Salem VAMC to take Plaintiff off medications that may have damaged his kidneys and exacerbated his decline in kidney functions in the years preceding his diagnosis of acute kidney injury (what the Court earlier labeled as "Claim 3").[19] Plaintiff appears to specifically allege that he developed a kidney disorder called Interstitial Nephritis because the Defendant failed to take him off certain medication after protein was detected in his urine in 2016. *Id*. ¶ 8. He alleges that "Interstitial Nephritis is usually caused by the medication that you take and stopping the medication usually solves the problem." *Id*. He further writes that the Defendant "did not appear to stop all of the medications." *Id*. As for the relevant standard of care, Plaintiff contends that his health care providers had an obligation to stop "the insult" to his kidneys when protein was detected. *Id*. He goes on to recount how he was not taken off medications, even though they could have caused Interstitial Nephritis. *Id*. Taken together, his statements could reasonably be read as an argument that Defendant should have directed Plaintiff to stop taking medications known to cause Interstitial Nephritis. *Id*. In describing other potential issues with medications, Plaintiff later contends twice in the complaint that Defendant had a responsibility to ensure that medications are not causing "more harm than good." *Id*. ¶¶ 9-10. Although Plaintiff does not specifically discuss his "more harm than good" standard with respect to medication that may have caused his Interstitial Nephritis, the concept of taking patients off medications with harmful side effects is implied. Considering all these aspects of the complaint and the Court's duty to liberally construe pro se pleadings, the Court finds that Plaintiff alleged a

---

[19] Although the Defendant does not appear to have construed the complaint to include this particular claim regarding medications, it does argue that the complaint "fails to plead a medical malpractice claim under Virginia law because it does not plead the requisite elements." Dkt. 17 at 12.  Because the Defendant contends that the complaint lacks any medical malpractice claims, the Court finds it appropriate to note that it has identified this claim in the complaint and explain why it is sufficiently plead.

standard of care whereby a reasonably prudent health care provider would have responded to elevated protein levels in a patient's urine by directing him to stop taking medications known to cause kidney disorders. Plaintiff alleges that Defendant breached this standard when it failed to take him off the medications. *Id*. ¶ 8. This breach, in turn, may have caused Interstitial Nephritis and contributed to further deterioration of his kidney functions which were already declining based on the urine test results from February 2016. *Id*. Although Plaintiff's complaint is difficult to understand at places, the Court finds that Plaintiff asserted enough facts to raise the elements of a medical malpractice claim with respect to the Defendant's purported failure to take him off harmful medications that worsened his kidney conditions.

Nevertheless, the Court also concludes that Plaintiff has failed to sufficiently plead Claim 7(b), regarding the purported failure to record the diagnosis in his chart. Plaintiff's complaint briefly describes how he was diagnosed in April 2020 with acute kidney injury during an emergency room visit to Lynchburg General Hospital. *Id*. ¶ 13. Although he proceeds to allege that the Defendant neither recorded the diagnosis in his medical chart, nor discussed the diagnosis with him, the complaint makes no clear assertions about what standard of care this breached, what injury Plaintiff suffered, and how the Defendant's course of action proximately caused this harm. In other words, the alleged facts are not sufficiently tied to the elements of medical malpractice. Additional allegations would be needed for the complaint to plausibly state a medical malpractice claim arising from the Defendant's actions (or lack thereof) following Plaintiff's April 2020 diagnosis.[20] While federal courts must read pro se pleadings liberally, they

---

[20] To be sure, Plaintiff alleged during the administrative claim process that his VA health care providers "failed to record the diagnosis" from April 2020 in his VA medical records and that his condition "was left untreated and it progressed to stage 3 chronic kidney disease." Dkt. 17 (Ex. 3 at 1). In Plaintiff's complaint, he alleges that Defendant did not record his April 2020 AKI diagnosis and did not discuss it with him – but he does not clearly connect this conduct with an alleged harm. He notes in the complaint that "[w]hen Acute Kidney Injury is left untreated it will become Chronic Kidney Disease," Am. Compl. ¶ 13, yet he does not specifically allege in the

are not obligated "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985). The Court will not do so here.

To summarize, the Court finds that Claims 1 and 3 may move forward at this time. Plaintiff has alleged enough to bring these two claims of alleged medical malpractice. That said, it remains to be seen whether Plaintiff would be able to prove his allegations at trial. Indeed, medical malpractice cases often require expert witnesses to prove the elements of a medical malpractice claim. *See Goulet v. Hereford*, No. 7:19-cv-0701, 2022 WL 16936052, at *10 (W.D. Va. Nov. 14, 2022); *Boden v. United States*, No. 7:18-cv-00256, 2022 WL 843923, at *17 (W.D. Va. Mar. 21, 2022). The Court will grant Defendant's Motion to Dismiss as to Claim #7(b), but will otherwise deny the motion as to to Claim #1 and to the extent that it applies to Claim #3.

## IV. REMEDIES

The Defendant argues in support of its motion to dismiss that Plaintiff seeks improper remedies in his complaint. Dkt. 17 at 14.

In his complaint, Plaintiff requests the Court award $5.5 million in damages "for malpractice." Am. Compl. at 4. Plaintiff also requests "100% disability" for his diabetes and chronic kidney disease, as well as "the privilege of being enrolled in the Veteran's Choice Program which will allow [him] to seek health care in the community of [his] choice." *Id*.

Defendant's argument is twofold.

First, Defendant argues that because this is a FTCA suit, the Plaintiff can only recover damages originally sought in his administrative claim. Defendant points to 28 U.S.C. § 2675(b), which provides that a FTCA complaint "shall not be instituted for any sum in excess of the

---

complaint that Defendant's conduct following the acute kidney injury diagnosis caused his development of chronic kidney disease.

amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." Because Plaintiff has failed to allege newly discovered evidence that could not have been reasonably discoverable at the time he presented his claims to the VA, Defendant argues that he should be limited to the amount he sought in his original claim to the VA. Dkt. 17 at 14. The SF-95 shows that Plaintiff alleged $500,000 as his total damages. Dkt. 17 (Ex. 1). Therefore, Defendant contends that Plaintiff's recovery is capped at $500,000. Dkt. 17 at 14. Plaintiff, for his part, asserts that he has "new and previously undiscoverable information" to justify his damages, Dkt. 23 at 3, although Defendant notes that Plaintiff has not explained "how any of that information was unavailable to him when he filed his SF-95." Dkt. 24 at 4.

Second, Defendant argues that Plaintiff has improperly sought injunctive or equitable relief in the form of disability diagnoses and enrollment in the Veteran's Choice Program. Defendant notes that a plaintiff's sole remedy under the FTCA is to recover money damages. Dkt. 17 at 14 (citing *Talbert v. U.S.*, 932 F.2d 1064, 1065-66 (4th Cir. 1991)). Plaintiff has not engaged with this specific argument about the unavailability of injunctive or equitable relief.

At this juncture, the Court need not dismiss portions of the Plaintiff's requested relief as part of its consideration of Defendant's Rule 12(b)(6) motion. *See Seward v. Kholmuradov*, No. 7:23-cv-220, 2023 WL 6811030, at *1 (W.D. Va. Oct. 16, 2023) (observing that "several judges of this Court have recognized that Rule 12(b)(6) 'does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety.'") (quoting *Facchetti v. Vest*, No. 5:15-cv-49, 2016 WL 3920487, at *1 (W.D. Va. July 18, 2016)).

Nevertheless, the Court emphasizes that Plaintiff will only be able to obtain relief for his FTCA claims that is authorized by the FTCA. Notably, injunctive relief will be unavailable because the statute only provides for money damages as a remedy.


## V. SUMMARY JUDGMENT IS PREMATURE

Plaintiff's motion for summary judgment is also pending before the Court. Dkt. 29. Plaintiff contends that the Defendant has failed to dispute any of the evidence presented in his filings thus far and that he should thus "prevail on all of [his] claims and receive all requested relief." Dkt. 29.

The Defendant raises a multitude of reasons why summary judgment is inappropriate at this time. The Defendant notes that its motion to dismiss was pending when Plaintiff filed his motion for summary judgment and that Defendant has not yet filed a responsive pleading. Dkt. 34 at 1. Moreover, Defendant asserts that Plaintiff has not demonstrated the absence of disputes of material fact, nor has he presented expert testimony in support of his medical malpractice claims, and the parties. *Id*. at 2-3. The parties have also not conducted discovery. Dkt. 34, at 3.

The Court need not address every reason why summary judgment is premature. It is sufficient to note that summary judgment should generally be granted "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Fourth Circuit has explained, "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask. For this reason, when a party lacks material facts necessary to combat a summary judgment motion, she may file an 'affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its opposition.'" *McCray v. Maryland Department of Transportation, Maryland Transit Admin*., 741 F.3d 480, 483 (4th Cir. 2014)

(quoting Fed. R. Civ. P. 56(d)). Here, the Defendant properly filed a Rule 56(d) Declaration with its "Response in Opposition to Smith's Motion for Summary Judgment." Dkt. 34. This Declaration explains that facts necessary to its opposition to the motion for summary judgment would include "written evidence of Smith's complete medical records, including that for any providers outside the VA medical system and testimonial evidence of Smith as well as that of any treating providers outside the VA medical system." *Id*. Additionally, the Defendant "needs discovery pertaining to any expert evidence Smith seeks to use to support his medical malpractice claims." *Id*. Given the fact-intensive nature of medical malpractice claims such as those Plaintiff alleges, the Court agrees with Defendant that discovery needs to occur before it will consider granting a motion for summary judgment. Accordingly, the Court will deny Plaintiff's motion for summary judgment.

## CONCLUSION

Plaintiff contends that medical malpractice by Salem VAMC personnel over the years contributed to his development of various medical conditions, particularly chronic kidney disease. However, key features of the FTCA – including administrative exhaustion as a condition precedent to litigation and the two-year statute of limitations – constrain the Court's authority to hear all of Plaintiff's claims. The Court finds that it lacks subject matter jurisdiction to hear Claims 4 through 7(a) and Claims 8 through 10 because Plaintiff failed to present them to the VA as part of the administrative claim process. Accordingly, the Court grants Defendant's motion to dismiss with respect to these claims. The Court also concludes that Claim 2 is time-barred under the FTCA's two-year limitations period. Thus, the Court grants Defendant's motion to dismiss as it applies to Claim 2. Finally, the Court finds that Plaintiff failed to sufficiently state a cause of

action for Claim 7(b). Accordingly, the Court grants Defendant's Motion to Dismiss with respect to Claim 7(b).

Nevertheless, for the purposes of deciding Defendant's motion to dismiss in a manner consistent with the Court's duty to liberally construe pro se pleadings, the Court finds that Plaintiff has sufficiently alleged a medical malpractice cause of action for Claims 1 and 3. The Court therefore denies the motion to dismiss as applied to these claims.

***

For the reasons stated above, the Court will **GRANT in part** Defendant's motion to dismiss, Dkt. 16, with respect to Claim 2 and Claims 4 through 10. However, it will **DENY in part** the motion to dismiss with regard to Claims 1 and 3. It is also ordered that Plaintiff's motion for summary Judgment, Dkt. 29, is **DENIED**.

It is so **ORDERED**.

Entered this 17th day of September, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE