CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/17/2025
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
   DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| FRANKIE L. SMITH,<br><br>　　　　　　　　　　*Plaintiff*,<br><br>v.<br><br>UNITED STATES,<br><br>　　　　　　　　　　*Defendant*. | CASE NO. 6:23-CV-78<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on cross-motions for summary judgment. Previously, the Court dismissed many of Plaintiff Smith's claims—allowing only Counts I and III to go forward. Dkt. 42 at 36. Now, Smith and the Government seek summary judgment on both medical malpractice counts. Dkts. 63, 72, 78.

In Count I, Smith alleges that the Salem Veteran Affairs Medical Center ("Salem VAMC") failed to diagnose him with a kidney disorder when, in February 2016 and March 2019, labs indicated protein in his urine. Dkt. 78 at 2. In Count III, Smith alleges that the Salem VAMC failed to take him off medications that may have damaged his kidneys and worsened his declining kidney function preceding his diagnosis of acute kidney injury. *Id.* For the following reasons, the Court will grant the Government's motion for summary judgment and will deny Smith's motion for summary judgment. Dkts. 63, 72. The Court will dismiss Smith's motion to define the continuous treatment rule, Dkt. 81, as moot.

## BACKGROUND

Smith is a Lynchburg resident and veteran who, beginning in 2008, received healthcare services at the Salem VAMC, a medical facility supported by the U.S. Department of Veterans

Affairs ("VA"). Dkt. 6 at 1-3; Dkt. 78 at 4.[1] On July 9, 2015, Salem VAMC Physician Assistant Amy Betteron diagnosed Smith with diabetes. Dkt. 64 at Ex. 5, US-001867, 69.[2] Smith's amended complaint alleges that, during this visit, his "eFGR was at 94 which was an indication that [his] kidneys were functioning properly." Dkt. 6 at 1. On February 11, 2016, Smith received a letter from Salem VAMC Nurse Practitioner Toby Foster that said Smith's recent lab results were "negative for urine protein," and that they all "look[ed] good." Dkt. 64 at Ex. 6, US-0001803-05. Smith takes issue with this letter, alleging it shows an elevated uACR result and an eFGR result that indicates "acute kidney injury." Dkt. 6 at 1.

After two years of routine care, on August 20, 2018, Salem VAMC Physician Assistant Glenn Gifford diagnosed Smith with chronic kidney disease. Dkt. 64 at Ex. 7, US-001788–90, US-001769–73, US-001746–50, US-001706–10, US-001691–94; Ex. 8, US-000351. Gifford changed Smith's diabetes medication from "metformin" to "glipizide" because his "kidney function was too low for metformin." *Id.* at Ex. 8, US-001634; Ex. 11, US-001585-92. On March 4, 2019, Smith visited the Salem VAMC for testing. Dkt. 64 at Ex. 12, US-000720. Smith's uACR level was 191.3 ug/mg; the normal range is 0-29. *Id.* A few days later, on March 11, 2019, Smith visited Physician's Assistant Ronny Bigham of the Salem VAMC who "explained abnormal findings" in the test results. *Id.* at Ex. 13 at US-001570-71. During this visit, Bingham also discussed Smith's diabetes and blood pressure, both of which Smith struggled to control as he ceased his diabetes medication. *Id.* at Ex. 11, US-001585.

Over a year later, on April 14, 2020, Smith went to Lynchburg General Hospital's emergency room for dizziness. Dkt. 64 at Ex. 15, US-002941-52. The doctor he saw there, Dr.

---

[1] Smith made several filings which lack page, paragraph, or exhibit numbers. Therefore, the Plaintiff's page numbers are cited based on the identifications affixed by the docketing system to the top of each page.
[2] The Government's exhibits contain Bates stamps; therefore, the Court will cite to those where relevant.

Christopher Steed, noted Smith's "creatine level [was] elevated," but was "unclear if this is acute versus chronic" as he had "no previous creatine for comparison." *Id.* at Ex. 15, US-002949.

On August 27, 2021, Dr. Hima Yalamanchili of the Salem VAMC updated Smith's medical record, changing his diagnosis to "chronic kidney disease stage 3 due to type 2 diabetes mellitus." Dkt. 64 at Ex. 16, US-000348. On November 12, 2021, another Salem VAMC physician, Dr. Dolly Lent, "explained to [Smith] what C Kd 3 is and how hypertension [and] diabetes [are] contributing" to his chronic kidney disease. *Id.* at Ex. 17, US-001235. About a year later, on August 26, 2022, Dr. Yalamanchili of the Salem VAMC modified Smith's medical records to "chronic kidney disease due to hypertension." *Id.* at Ex. 19, US-000344.

On December 5, 2022, Smith went to the Johnson Health Center—a medical provider not associated with the Salem VAMC—and saw Dr. Valerie Renninger. Dkt. 64 at Ex. 19, US-002175. Dr. Renninger noted in her records that Smith was "extremely focused on having been on lisinopril and metformin in the past," and that he believed that the medications "coincided with the onset" of his kidney disease. *Id.* Although Dr. Renninger discussed the frequency of chronic kidney disease co-occurring with hypertension and diabetes, Smith "continue[d] to feel that 'the VA' did something wrong by having him on those medications." *Id.* During this appointment, Dr. Renninger "refer[red] [Smith] to UVA hematology per his request." *Id.* at US-022177.

On May 22, 2023, Smith saw Dr. John Wisener at the University of Virgina's Nephrology Clinic, as per his referral from Dr. Renninger. Dkt. 64 at Ex. 20, US-000092. Dr. Wisener noted Smith "sa[id] his questions were not being answered (to his satisfaction)" by Dr. Renninger. *Id.* Dr. Wisener assessed that Smith had "chronic kidney disease stage 3 secondary to diabetic nephropathy and hypertensive nephrosclerosis." *Id.* at US-00095. He had a "40 minute

3

(sic) discussion" with Smith "trying to answer his questions." *Id.* These attempts were futile as Smith believed "he had an acute kidney injury based on an ER visit." *Id.* at US-00096. Both Smith and Dr. Wisener "agree[d]" that the "physician-patient relationship [was] not a good fit" as the doctor was "not . . . able to answer [Smith's] questions to his satisfaction." *Id.*

After these two visits, Smith returned to the Salem VAMC on August 16, 2023. Dkt. 64 at Ex. 21, US-001031. He again saw Dr. Yalamanchili, where he insisted on seeing his labs. *Id.* Dr. Yalamanchili "discussed" the labs "in detail with graphs shown since 2009 about creatinine and urine protein tests." *Id.* Smith asked if "lisinopril caused his kidney disease," to which Dr. Yalamanchili explained "lisinopril is considered protective for diabetic kidney patients." *Id.* at US-001033. Smith responded that he didn't "believe that" and that he didn't "trust the VA" as they "put him on medications to hurt [his] kidneys." *Id.* at US-001034.

Smith began pursuing claims against the VA on April 4, 2022 when he filed Standard Form 95. Dkt. 17-1. His claim was denied a few months later, and in January 2023, Smith filed a request for consideration, which was denied on June 28, 2023. Dkts. 17-2, 17-3, 78 at 4. He then began pursuing his claims in this Court. Dkt. 1.

## STANDARD OF REVIEW

Summary judgment is appropriate where a case has "no genuine dispute as to any material fact" and if "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, a fact is material "if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659

4

(4th Cir. 2018). A dispute is "genuine if a reasonable [fact finder] could return a verdict for the nonmoving party." *Id.*

Any party can move for summary judgment following the conclusion of discovery; yet the moving party bears the burden and must establish that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on allegations in the pleadings; rather, it must present sufficient evidence so that a reasonable fact finder could find disputed facts in their favor. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). At summary judgment, the district court evaluates claims using a preponderance of the evidence standard. *Sylvia Dev. Corp.*, 48 F.3d at 818. The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

## ANALYSIS

### A. Plaintiff Smith's Claims are Time-Barred, and the Continuous Treatment Exception Does Not Apply

The Government argues that Smith's claims are time-barred as he failed to file his Federal Tort Claims Act (FTCA) action within two years of Count I and Count III's accrual. Dkt. 64 at 8. According to the Government, Count I "accrued on the respective dates that [Smith] purportedly had indications of protein in his urine—February 2016 and March 2019" and Count III accrued "when [he] was diagnosed with chronic kidney disease in August 2018." *Id.* at 9. The Government further argues that the continuous treatment rule does not apply to either Count I or III as Smith did not "ha[ve] continuing care from the same doctor." *Id.* at 10.

5

Smith's response brief to the Government contests these points. Regarding Count I, he asserts that "the tests prior to the diagnosis of acute kidney injury are relevant." Dkt. 69 at 3. Regarding Count III, he asserts that he was "diagnosed with acute kidney injury on 14 April 2020," which is within the two-year period permitted by the FTCA. *Id.* at 2. Smith further argues that, for both Counts I and III, "[s]urely, the continuous treatment rule would apply here." *Id.* at 3. Smith's own summary judgment motion asserts another argument—that "the United States did not deny" either claim. Dkt. 78 at 2.

For the following reasons, the Court finds that Counts I and III are time-barred, and that the continuous treatment exception does not apply.

  1. *Smith's claims are time-barred under the Federal Tort Claims Act as neither Count I or Count III accrued within the required two-year period*

Under the FTCA, medical malpractice suits may be brought against the United States "within two years" after a claim "accrues." 28 U.S.C. 2401(b). According to the Fourth Circuit, medical malpractice claims accrue "when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." *Gould v. U.S. Dep't of Health & Hum. Srvs.*, 905 F.2d 738, 742 (4th Cir. 1990) (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). Once a plaintiff has "possession of the critical facts that he has been hurt and who inflicted the injury," the medical malpractice claim accrues. *See Kubrick*, 444 U.S. at 122. Put simply, if a plaintiff knows that "some aspect of his treatment caused an injury," they must file an FTCA claim within two years, or else their claims are "forever barred." *Kerstetter v. United States*, 57 F.3d 363, 364-65 (4th Cir. 1995); 28 U.S.C. 2401(b).

In Count I, Smith asserts that "the Salem VAMC failed to diagnose a kidney disorder . . . in February 2016 and March 2019." Dkt. 78 at 1. The Government argues that Count I accrued after Smith "received lab results" indicating protein in his urine, or when "he failed to receive lab

6

results after providing urine for urinalysis." Dkt. 64 at 9. The Court agrees and will now analyze when Smith's February 2016 and March 2019 claims accrued.

On February 11, 2016, Smith received lab results via letter from the Salem VAMC. Dkt. 64 at Ex. 6, US-0001803-05. This letter indicated his labs were "negative for urine protein," and that they "look[ed] good." *Id.* Despite this assertion, the labs showed a "sudden decline" in Smith's "eGFR reading" and showed "a uACR of 44.6 when the normal range is (0-29)" indicating "protein in [his] urine." Dkt. 6 at 1. Thus, after Smith received the February 11 letter, he "possess[ed] . . . the critical fact" that his kidneys were "hurt." *Kubrick*, 444 U.S. at 122. Because of this letter, Smith was on notice that "some aspect of his treatment" had potentially "caused an injury." *Kerstetter*, 57 F.3d at 364-65. As such, his February 2016 claim accrued once he received the letter.

On March 4, 2019, Smith received abnormal kidney labs. Dkt. 64 at Ex. 12, US-000720. His uACR was "191.3," again indicating protein in his urine. *Id.* Because of these abnormal results, Smith was on notice that "some aspect of his treatment" had potentially "caused an injury." *Kerstetter*, 57 F.3d at 364-65. Thus, his March 2019 claim accrued when he received his test results.

Smith filed his FTCA claim on April 4, 2022. Dkt. 17-1. Thus, any injury he alleges must have accrued on or after April 4, 2020 to be timely. 28 U.S.C. 2401(b). As analyzed above, both the February 2016 and the March 2019 claims accrued well before this date. Count I, therefore, is time-barred.

In Count III, Smith asserts that "the Salem VAMC failed to take [him] off medication that may have damaged [his] kidneys and worsened [his] declining kidney function in the years

7

preceding [his] diagnosis of acute kidney injury." Dkt. 78 at 1.[3] The Government argues that this claim "accrued at the latest when Smith was diagnosed with chronic kidney disease in 2018." *Id.*

Count III's accrual is difficult to evaluate as Smith never received an acute kidney injury diagnosis. On April 14, 2020, Smith visited the Lynchburg General Hospital's emergency room for dizziness; in the labs that were performed, the doctor noted Smith's high creatine level but was "unable to determine whether [Smith's] kidney issue was 'acute versus chronic.'" Dkt. 64 at Ex. 15, US-002949. Contrary to these records, Smith argues he was "diagnosed with acute kidney injury in April 2020." Dkt. 69 at 2.

Across all of Smith's medical records, only one diagnosis of kidney disease exists—Salem VAMC Physician Assistant Glenn Gifford diagnosed Smith with chronic kidney disease on August 20, 2018. Dkt. 64 at Ex. 8, US-000351. While the Court construes Smith's filings liberally, the Court cannot construe facts liberally. Therefore, the Court cannot interpret either the emergency room's or the Salem VAMC's diagnoses as acute kidney injury. As such, the Court interprets Count III as pertaining to medications prescribed before Smith's diagnosis of chronic kidney disease in 2018.

Once Smith received a diagnosis of chronic kidney disease, he had actual knowledge that "some aspect of his treatment caused an injury." *Kerstetter*, 57 F.3d at 364-65. Therefore, Count III accrued on August 20, 2018. Due to when Smith filed his FTCA claim, any injury he alleges must have accrued on or after April 4, 2020 to be timely. 28 U.S.C. 2401(b). Since Count III accrued well before this date, Count III is time-barred.

---

[3] Smith alleges negative effects of "metformin . . . hydrochlorothiazide . . . omeprazole . . . rantindine . . . [and] lisinopril." Dkt. 78 at 10.

8

*2. The continuous treatment exception does not apply*

Smith argues that he overcomes the time bar for both Counts I and III because "the continuous treatment rule applies" as he has been "under the continuous treatment of the Salem VAMC since 2008" "for the same condition since the condition was reported." Dkt. 69 at 3, 8. The Government disagrees, arguing "the continuous treatment rule" is "inapplicable" as Smith "does not allege he has continuing care from the same doctor tolling the statute of limitations." Dkt. 64 at 10. The Court agrees that the continuous treatment rule does not apply.

The continuous treatment rule tolls the statute of limitations for medical malpractice claims "so long as the plaintiff remains under the 'continuous treatment' of a physician whose negligence is alleged to have caused the injury." *See Miller v. United States*, 932 F.2d 301, 304 (4th Cir. 1991); *Clutter-Johnson v. United States*, 714 Fed. Appx. 205, 207-08 (4th Cir. 2017) (unpublished). This rule arises in three factual contexts—when a patient receives treatment for the "same problem" by one of the following: (i) "the same doctor;" (ii) by "the doctor's associates;" or (iii) "other doctors operating under [her] authority." *Miller*, 932 F.2d at 305. A medical provider "operates under" the authority of the original physician if medical care is "rendered at [their] advice." *Otto v. Nat'l Inst. of Health*, 815 F.2d 985, 988-89 (4th Cir. 1987). The rationale underlying the continuous treatment rule often guides its application; if a patient is receiving continuous medical care that attempts to correct a doctor's negligence, that patient should not have to interrupt care or compromise physician-patient confidentiality in order to bring a malpractice suit. *See Miller*, 932 F.2d at 305 (citing *Page v. United States*, 729 F.2d 818, 823 n.36 (D.C. Cir. 1984)).

Other district courts in the Fourth Circuit have found the continuous treatment rule applies when a patient receives care, such as surgery, from a government hospital. *See, e.g.*,

9

*Holland v. United States*, 302 F. Supp. 2d 484, 488 (M.D.N.C. 2004); *Tolliver v. United States*, 831 F. Supp. 558, 560-61 (S.D.W.V. 1993); *Todd v. United States*, 570 F. Supp. 670, 676 (D.S.C. 1983). Until the patient seeks treatment outside the government hospital, the statute of limitations for FTCA claims tolls. *Holland*, 302 F. Supp. 2d at 488. However, these cases require "a close nexus . . . for a change of doctors to not break the chain" and often involve follow-up care from a large procedure or surgery rather than ongoing treatment for chronic diseases. *Holland*, 302 F. Supp. at 485 (patient received "arthroscopic right knee surgery for service-related injury:); *Tolliver*, 831 F. Supp. at 559 (patient received "elective gall blader surgery"); *Todd*, 570 F. Supp. at 673 (patient received "decompressive cervical laminectomy").

Over the course of Smith's treatment at the Salem VAMC, he saw at least nine different medical professionals. Dkt. 64 at Ex. 5, US-001867, 69; Ex. 6, US-0001803-05; Ex. 8, US-000351; Ex. 13 at US-001570-71; Ex. 16, US-000348; Ex. 17, US-001235; Ex. 19, US-002175; Ex. 20, US-000092; Ex. 21, US-001031. Likewise, he visited the Salem VAMC for multiple chronic diseases and medical complaints. *See id.* at Ex. 5, US-001867 (seeking treatment for allergies and inflamed insect bite); Ex. 8, US-000351 (chart updated to include chronic kidney disease); Ex. 13, US-001570 (seeking treatment for diabetes and left leg itching); Ex. 17, US-001232 (seeking treatment to manage chronic conditions and because of itchy scalp and potential nut allergy).

Smith did not have a consistent physician, nor does he allege that his care team "operat[ed] under" the direction of one specific physician. *Otto*, 815 F.2d at 988-89; *Miller*, 932 F.2d at 305. Likewise, Smith did not visit the Salem VAMC for the purposes of managing "the same problem." *Miller*, 932 F.2d at 305. His case is not analogous to the other district court cases that allowed medical care at government hospitals to toll the statute of limitations. Therefore,

10

Smith's care does not qualify under the continuous treatment rule, and he does not overcome the FTCA's time bar of his claims.

### B. Plaintiff Smith Claims Fail as He Failed to Produce an Expert Witness

In addition to arguing that Smith's claims are untimely, the Government argues that summary judgment should be granted in its favor, as Smith "has no expert witness," which is required "for him to meet his burden of proof." Dkt. 64 at 11. In his amended motion for summary judgment, Smith asserts that he was "unable to acquire an expert witness." Dkt. 78 at 4. Smith denies the need for an expert, however, saying "the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Dkt. 69 at 8. The Court agrees with the Government.

To bring a claim for medical malpractice under Virginia law,[4] a plaintiff must establish: "(1) the applicable standard of care; (2) breach of that standard of care; and (3) that the breach proximately caused the plaintiff's injuries." *Campbell v. United* States, 470 Fed. Appx. 153, 158 (4th Cir. 2012) (unpublished) (citing *Parker v. United States*, 475 F. Supp. 2d 594, 598 (E.D. Va. 2007)). Because medical malpractice claims are often quite technical, "expert testimony is ordinarily necessary." *Id.* The Supreme Court of Virginia establishes this requirement because "medical malpractice often fall[s] beyond the realm of common knowledge and experience of a lay jury." *Summers v. Syptak*, 293 Va. 606, 613 (2017) (citing *Beverly Enter.-Va. Inc. v. Nichols*, 247 Va. 264, 267 (1994)). Expert witnesses are not required when the "act of negligence clearly lies within the range of the jury's common knowledge and experience." *Nichols*, 247 Va. at 269 (no expert required where medical provider left food tray beside elderly patient with history of

---

[4] Under the FTCA, claims are governed by the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). As Smith only alleges conduct that occurred in Virginia, Virginia law governs his medical malpractice claims.

11

choking); *Webb v. Smith*, 276 Va. 305, 308 (2008) (no expert required for case where doctor agreed to perform two surgical procedures and instead only performed one).

Other district courts in the Fourth Circuit have granted summary judgment for the Government when plaintiffs failed to present expert evidence in support of claims arising from improper medication regimes. *See Mack v. United States*, 2024 WL 4285514, at *5-6 (E.D. Va. Apr. 12, 2024) (arguing "complex question of pharmacology" was "outside the purview of the average fact-finder" and "requires expert testimony"); *Freeman v. United States*, 2014 WL 2967922, at *2 (W.D. Va. June 30, 2014) (finding issue of prescribing medication "not within the common knowledge and experience of a layperson" and requiring "expert testimony regarding the standard of care and proximate cause of [plaintiff's] injuries").

In this case, Count I involves technical questions about medical testing, interpretation of results, and questions of how physicians go about making diagnoses. Count III involves technical understanding of at least five different medications; how those medications interact with various body systems; how various kidney tests are performed and evaluated; and how medical providers know when it is appropriate to cease a medication based on all these factors. As such, Smith's claim requires expert testimony—a reasonable fact finder will not have all of this medical information in their "common knowledge and expertise." *Nichols*, 247 Va. at 267.

Since Smith has failed to present expert testimony on these complex medical issues, and because Smtih failed to bring his claims in a timely manner, the Court grants the Government's request for summary judgment on Counts I and III.

## Conclusion

For the above-stated reasons, the Government's motion for summary judgment is **GRANTED**. Dkt. 63. Plaintiff Smith's amended motion for summary judgment is **DENIED**. Dkt. 78. Plaintiff Smith's motion to define the continuous treatment rule is **DISMISSED AS**

**MOOT**. Dkt. 81.

It is **SO ORDERED**.

The Clerk's office is hereby directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered this the 17th day of October, 2025.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE